

**United States Department of Justice**

*United States Attorney*
*Southern District of West Virginia*

---

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
1-800-659-8726

*Mailing Address*
Post Office Box 1713
Charleston, WV 25326
304-345-2200
FAX: 304-347-5104

April 2, 2018



Mychal S. Schulz
Babst Calland Attorneys at Law
300 Summers Street
Suite 1000
Charleston, West Virginia 25301

Re:  United States v. Brian Scott Miller

Dear Mr. Schulz:

This will confirm our conversations with regard to your client, Brian Scott Miller (hereinafter "Mr. Miller"). As a result of these conversations, it is agreed by and between the United States and Mr. Miller as follows:

1. **CHARGING AGREEMENT.** Mr. Miller agrees to waive his right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a single-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

2. **RESOLUTION OF CHARGES.** Mr. Miller will plead guilty to the said information, which charges him with a violation of 42 U.S.C. § 6928(d)(2)(A) and 18 U.S.C. § 2.

3. **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Mr. Miller will be exposed by virtue of this guilty plea is as follows:

(a)  Imprisonment for a period of 5 years;

(b)  A fine of $50,000 per day, or twice the gross pecuniary

Defendant's
Initials

Mychal S. Schulz
April 2, 2018                         Re: Brian Scott Miller
Page 2

> gain or twice the gross pecuniary loss resulting from
> defendant's conduct, or $250,000 under Alternative Fines
> Act, whichever is greater;
>
> (c)   A term of supervised release of 3 years;
>
> (d)   A mandatory special assessment of $100 pursuant to 18
>       U.S.C. § 3013; and
>
> (e)   An order of restitution pursuant to 18 U.S.C. §§ 3663
>       and 3664, or as otherwise set forth in this plea
>       agreement.

4.   **SPECIAL ASSESSMENT.**   Prior to the entry of a plea
pursuant to this plea agreement, Mr. Miller will tender a check or
money order to the Clerk of the United States District Court for
$100, which check or money order shall indicate on its face the
name of defendant and the case number.   The sum received by the
Clerk will be applied toward the special assessment imposed by the
Court at sentencing.   Mr. Miller will obtain a receipt of payment
from the Clerk and will tender a copy of such receipt to the United
States, to be filed with the Court as an attachment to this plea
agreement.   If Mr. Miller fails to provide proof of payment of the
special assessment prior to or at the plea proceeding, the United
States will have the right to void this plea agreement.   In the
event this plea agreement becomes void after payment of the special
assessment, such sum shall be promptly returned to Mr. Miller.

5.   **PAYMENT OF MONETARY PENALTIES.**   Mr. Miller agrees not
to object to the District Court ordering all monetary penalties
(including the special assessment, fine, court costs, and any
restitution that does not exceed the amount set forth in this plea
agreement) to be due and payable in full immediately and subject
to immediate enforcement by the United States.   So long as the
monetary penalties are ordered to be due and payable in full
immediately, Mr. Miller further agrees not to object to the
District Court imposing any schedule of payments as merely a
minimum schedule of payments and not the only method, nor a

                                          Defendant's
                                          Initials

Mychal S. Schulz
April 2, 2018                          Re: Brian Scott Miller
Page 3

limitation on the methods, available to the United States to enforce the judgment.

6.   **COOPERATION.**  Mr. Miller will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States.  In complying with this provision, Mr. Miller may have counsel present except when appearing before a grand jury.  Further, Mr. Miller agrees to be named as an unindicted co-conspirator and unindicted aider and abettor, as appropriate, in subsequent indictments or informations.

7.   **USE IMMUNITY.**  Unless this agreement becomes void due to a violation of any of its terms by Mr. Miller, and except as expressly provided for in paragraph 9 below, nothing contained in any statement or testimony provided by him pursuant to this agreement, or any evidence developed therefrom, will be used against him, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

8.   **LIMITATIONS ON IMMUNITY.**  Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Mr. Miller for any violations of federal or state laws. The United States reserves the right to prosecute Mr. Miller for perjury or false statement if such a situation should occur pursuant to this agreement.

9.   **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Mr. Miller stipulate and agree that the facts comprising the offense of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

                                        Defendant's
                                        Initials

Mychal S. Schulz
April 2, 2018                          Re: Brian Scott Miller
Page 4

Mr. Miller agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by him, and he is subsequently tried for his conduct alleged in the information and other relevant conduct, as more specifically described in the Stipulation of Facts, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Mr. Miller or of any of his witnesses, or in rebuttal of any testimony introduced by him or on his behalf. Mr. Miller knowingly and voluntarily waives, see United States v. Mezzanatto, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Mr. Miller understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

10. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Mr. Miller agree that the following provisions of the United States Sentencing Guidelines apply to this case.

USSG §2Q1.2

Base offense level                              8
(§2Q1.2(a))

Storage of Hazardous Waste Without
a Permit (§2Q1.2(b)(4))                         4

Defendant's
Initials

Mychal S. Schulz
April 2, 2018                               Re: Brian Scott Miller
Page 5

        Adjusted offense level                    12

     The parties disagree regarding the applicability of USSG
§3B1.1 (Aggravating Role) and reserve their right to present this
issue to the Court.

     The United States and Mr. Miller acknowledge and understand
that the Court and the Probation Office are not bound by the
parties' calculation of the United States Sentencing Guidelines
set forth above and that the parties shall not have the right to
withdraw from the plea agreement due to a disagreement with the
Court's calculation of the appropriate guideline range.

     11.    **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Mr. Miller
knowingly and voluntarily waives the right to seek appellate review
of his conviction and of any sentence of imprisonment, fine or
term of supervised release imposed by the District Court, or the
manner in which the sentence was determined, on any ground
whatsoever, including any ground set forth in 18 U.S.C. § 3742(a),
except that he may appeal any sentence that exceeds the maximum
penalty prescribed by statute. Mr. Miller also knowingly and
voluntarily waives any right to seek appellate review of any claim
or argument that (1) the statues of conviction, 42 U.S.C. §
6928(d)(2)(A) and 18 U.S.C. § 2 are unconstitutional, and (2) Mr.
Miller's conduct set forth in the Stipulation of Facts (Plea
Agreement Exhibit B) does not fall within the scope of 42 U.S.C.
§ 6928(d)(2)(A) and 18 U.S.C. § 2.

     The United States also agrees to waive its right to appeal
any sentence of imprisonment, fine, or term of supervised release
imposed by the District Court, or the manner in which the sentence
was determined, on any ground whatsoever, including any ground set
forth in 18 U.S.C. § 3742(b), except that the United States may
appeal any sentence that is below the minimum penalty, if any,
prescribed by statute.

     Mr. Miller also knowingly and voluntarily waives the right to
challenge his guilty plea and conviction resulting from this plea

                                          Defendant's
                                          Initials

Mychal S. Schulz
April 2, 2018                          Re: Brian Scott Miller
Page 6

agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

12. **WAIVER OF FOIA AND PRIVACY RIGHT.** Mr. Miller knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

13. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

(a) Inform the Probation Office and the Court of all relevant facts and conduct;

(b) Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

(c) Respond to questions raised by the Court;

(d) Correct inaccuracies or inadequacies in the presentence report;

(e) Respond to statements made to the Court by or on behalf of Mr. Miller;

(f) Advise the Court concerning the nature and extent of Mr. Miller's cooperation; and

Defendant's
Initials

Mychal S. Schulz
April 2, 2018                              Re: Brian Scott Miller
Page 7


    (g)   Address the Court regarding the issue of Mr. Miller's
        acceptance of responsibility.

    14.  **VOIDING OF AGREEMENT.**  If either the United States or
Mr. Miller violates the terms of this agreement, the other party
will have the right to void this agreement. If the Court refuses
to accept this agreement, it shall be void.

    15.  **ENTIRETY OF AGREEMENT.**  This written agreement
constitutes the entire agreement between the United States and Mr.
Miller in this matter.  There are no agreements, understandings
or recommendations as to any other pending or future charges
against Mr. Miller in any Court other than the United States
District Court for the Southern District of West Virginia.

    Acknowledged and agreed to on behalf of the United States:

                    MICHAEL B. STUART
                    United States Attorney


        By:

                    ERIK S. GOES
                    Assistant United States Attorney


                    PERRY D. MCDANIEL
                    Special Assistant
                    United States Attorney

ESG/smw



                                  Defendant's
                                    Initials

Mychal S. Schulz
April 2, 2018                          Re: Brian Scott Miller
Page 8


        I hereby acknowledge by my initials at the bottom of each of
the foregoing pages and by my signature on the last page of this
eight-page agreement that I have read and carefully discussed every
part of it with my attorney, that I understand the terms of this
agreement, and that I voluntarily agree to those terms and
conditions set forth in the agreement.  I further acknowledge that
my attorney has advised me of my rights, possible defenses, the
Sentencing Guideline provisions, and the consequences of entering
into this agreement, that no promises or inducements have been
made to me other than those in this agreement, and that no one has
threatened me or forced me in any way to enter into this agreement.
Finally, I am satisfied with the representation of my attorney in
this matter.


_____          _____
Brian Scott Miller                                Date Signed
Defendant


_____          _____
Mychal S. Schulz                                  Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                          CRIMINAL NO. _____
                                        42 U.S.C. § 6928(d)(2)(A)
                                        18 U.S.C. § 2
BRIAN SCOTT MILLER


I N F O R M A T I O N

(Storage of Hazardous Waste Without a Permit)

The United States Attorney Charges:

**Background**

At all relevant times:

1.   Pursuant to the Resource Conservation and Recovery Act
("RCRA"), the United States Environmental Protection Agency
("EPA") and the states regulated various types of solid wastes
classified as hazardous wastes.  RCRA made it a crime for a person
to knowingly treat, store or dispose of hazardous waste without a
permit.

2.   The EPA authorized the State of West Virginia,
specifically the West Virginia Department of Environmental
Protection ("WV DEP"), to administer a hazardous waste program in


PLEA AGREEMENT EXHIBIT "A"

lieu of a federal program.  The EPA retained enforcement authority to enforce RCRA in West Virginia.

3.    Defendant BRIAN SCOTT MILLER was the owner and president of Executive Air Terminal, Inc. ("Executive Air").

4.    Executive Air was a West Virginia corporation that served as the fixed base operator at Yeager Airport in Charleston, West Virginia.  Specifically, Executive Air provided aeronautical services, including fueling, hangaring, and other services for private and commercial airplanes at Yeager Airport in Charleston, West Virginia.

5.    Executive Air generated hazardous waste in the course of fueling and other services. The hazardous waste was generated during Executive Air's operations by draining and collecting fluids, such as oil, aviation fuels, deicing fluid, and other similar fluids.  These fluids generally were placed in unmarked 55-gallon drums by Executive Air employees.

6.    Executive Air was allowed, pursuant to RCRA, to store up to 1000 kilograms of hazardous waste without obtaining a RCRA hazardous waste storage permit from the WV DEP.  Executive Air needed to obtain a RCRA storage permit once the amount of stored hazardous waste exceeded 1000 kilograms.


PLEA AGREEMENT EXHIBIT "A"

7.    By September 2015, Executive Air had accumulated thirty-seven 55-gallon drums containing waste fluids. Twenty-seven of the drums contained hazardous waste.   The twenty-seven drums weighed approximately 3674 kilograms.

8.    Executive Air did not have a permit to store hazardous waste at its Yeager Airport facility.

### The RCRA Violation

9.    On or about September 17, 2015, at or near Charleston, Kanawha County, West Virginia, in the Southern District of West Virginia, and elsewhere, defendant BRIAN SCOTT MILLER, aided and abetted by others known to the United States Attorney, knowingly stored, and caused the storage of hazardous waste at the Executive Air facility at Yeager Airport, without a permit as required by RCRA, until the drums were moved off site in the early morning hours of September 17 and 18, 2015.

PLEA AGREEMENT EXHIBIT "A"

In violation of Title 42, United States Code, Section and 6928(d)(2)(A), and Title 18, United States Code, Section 2.

UNITED STATES OF AMERICA

MICHAEL B. STUART
United States Attorney

By: _____
ERIK S. GOES
Assistant United States Attorney

_____
PERRY D. MCDANIEL
Special Assistant United States Attorney

PLEA AGREEMENT EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                         CRIMINAL NO. _____

BRIAN SCOTT MILLER

### STIPULATION OF FACTS

The United States and Brian Scott Miller (hereinafter "Mr. Miller") stipulate and agree that the facts comprising the offenses of conviction in the Information in the Southern District of West Virginia, and the relevant conduct for those offenses, include the following:

1.    Mr. Miller is the owner and president of Executive Air Terminal, Inc. ("Executive Air").  Mr. Miller was responsible for all operations at Executive Air, including the handling of hazardous waste.

2.    Executive Air is the fixed base operator at Yeager Airport in Charleston, West Virginia.  As a fixed base operator, Executive Air had a contract with Yeager Airport in Charleston, West Virginia to provide aeronautical services, including fueling, hangaring, and other services. Executive Air provided fueling and other services for private and commercial airplanes at Yeager Airport.

3.    In the course of its duties as the fixed base operator, Executive Air generated hazardous waste.  The hazardous wastes generated included aviation gas, jet fuel, and mixtures containing aviation fuels with used oil and other fluids.  Pursuant to federal law, Executive Air registered with the State of West Virginia to generate small quantities of hazardous waste, and was "conditionally exempt" from regulation under the federal Resource Conservation and Recovery Act ("RCRA").  If Executive Air violated certain conditions for being "conditionally exempt" under RCRA, it was required to get a permit for the storage of hazardous waste. One such condition was a prohibition on the storage of more than 1000 kilograms of hazardous waste.

4.    By September 2015, Executive Air had accumulated thirty-seven 55-gallon drums filled with waste fluids. Executive Air accumulated the waste fluids in drums for some unknown time period

PLEA AGREEMENT EXHIBIT "B"

prior to September 2015.  Executive Air did not label the drums with the contents of the waste or the date that waste liquids were initially stored in each drum.

5.  Neither Mr. Miller nor Executive Air had a permit to treat, store, and dispose of hazardous waste at the Executive Air facility at Yeager Airport.

6.  Mr. Miller knew the drums had been stored at the Executive Air facility.  Mr. Miller knew that the waste drums contained used oil, aviation gas, jet fuel, or mixtures of these fluids.

7.  In the first two weeks of September 2015, Mr. Miller directed an employee to dispose of the drums.  Despite having hired a licensed hazardous waste hauler in 2006-2008, Miller did not have the drums transported in September 2015 from Executive Air by a licensed hazardous waste hauler.  Instead, in compliance with Mr. Miller's request to dispose of the drums, the employee arranged with a former Executive Air employee to transport the drums off site to the former employee's rural property near Charleston, West Virginia.  The drums were transported in several truckloads after midnight and in the early morning hours of September 17-18, 2015.  The employee and former employee were not licensed to transport hazardous waste.  Executive Air transported the drums without a hazardous waste manifest.  The former employee did not have a permit to treat, store or dispose of hazardous waste.

8.  Mr. Miller subsequently directed his employee to arrange for the drums to be moved from the former employee's property.  The employee contacted a Charleston sewage hauler who agreed to transport the drums from the former employee's property.  The sewage hauler transported the drums to his business facility in Charleston, West Virginia.  The sewage hauler was not licensed to transport hazardous waste.  The drums were transported without a hazardous waste manifest.  The sewage hauler did not have a permit to treat, store or dispose of hazardous waste.

9.  The drums were discovered on November 4, 2015, at the sewage hauler's facility by the United States Environmental Protection Agency ("EPA") Criminal Investigation Division.  The West Virginia Department of Environmental Protection ("WV DEP") Homeland Security Emergency Response Unit transported the drums to a facility operated by that agency.  The WVDEP facility had a permit to store hazardous waste.  The contents of the drums were sampled by the EPA and a third-party contractor hired by Executive Air.  The analysis of the samples demonstrated that the contents

**PLEA AGREEMENT EXHIBIT "B"**

of twenty-seven (27) drums constituted hazardous waste pursuant to RCRA. Specifically, all twenty-seven drums were hazardous for ignitability, toxicity, or both. The twenty-seven drums weighed approximately 3674.09 kilograms, exceeding the 1000 kilogram RCRA permit exemption.

10. The United States and Mr. Miller further stipulate that the events constituting the criminal violation in the Information occurred in or around Charleston, Kanawha County, West Virginia, which is in the Southern District of West Virginia.

This Stipulation of Facts does not contain each and every fact known to the defendant and to the United States concerning his involvement and the involvement of others in the charges set forth in the Information.

Stipulated and agreed to:

_____          April 5, 2018
BRIAN SCOTT MILLER                          Date
Defendant

_____          April 5 2018
MYCHAL S. SCHULZ                            Date
Counsel for Defendant

_____          4/6/18
ERIK S. GOES                                Date
Assistant United States Attorney

_____          4-6-2018
PERRY D. MCDANIEL                           Date
Special Assistant United States Attorney

**PLEA AGREEMENT EXHIBIT "B"**
3